NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-2814

_____

ARTHUR CHASSEN; DEBORAH MEREDITH;
JOEL OSTER; DENNIS SCRIMER; GLEN J. DALAKIAN;
JACK HOFFMAN; DEBORAH HOFFMAN; KATHLEEN COOPER;
RICHARD MURPHY, individually and on behalf of others similarly situated;
AMI FELLER

v.

FIDELITY NATIONAL FINANCIAL INC, a Delaware corporation;
FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation;
CHICAGO TITLE INSURANCE COMPANY, a Missouri corporation;
THE FIRST AMERICAN CORPORATION, a California corporation;
FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation;
LANDAMERICA FINANCIAL GROUP INC, a Virginia corporation;
TRANSNATION TITLE INSURANCE COMPANY, a Nebraska corporation;
LAWYERS TITLE INSURANCE CORPORATION, a Nebraska corporation;
STEWART INFORMATION SERVICES CORPORATION, a Delaware corporation;
STEWART TITLE GUARANTY COMPANY, a Texas corporation;
OLD REPUBLIC INTERNATIONAL CORPORATION, a Delaware corporation;
OLD REPUBLIC TITLE INSURANCE GROUP, INC., a Delaware corporation;
OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, a Minnesota
corporation; WEICHERT TITLE AGENCY

Lawyers Title Insurance Corporation,
                                                                    Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-09-cv-00291)
District Judge: Honorable Peter G. Sheridan

_____

Submitted Under Third Circuit LAR 34.1(a)

July 14, 2017

Before: MCKEE, AMBRO, and ROTH, Circuit Judges

(Opinion filed: August 3, 2017)

---

OPINION[*]

---

AMBRO, Circuit Judge

Defendant Lawyers Title Insurance challenges the denial of its motion to compel Plaintiffs Deborah and Jack Hoffman to arbitrate an insurance dispute. Because we agree with the District Court that the Hoffmans did not consent to arbitrate, we affirm.

## I. BACKGROUND

The Hoffmans purchased a New Jersey home in 2004. They allege that Lawyers Title Insurance overcharged them by $110.[1] At closing, Lawyers Title Insurance issued them an Owner's Policy and a Loan Policy. The Policies contained an arbitration provision permitting either party to compel arbitration should a dispute arise. However, the Owner's Policy also included an Arbitration Endorsement that amended the arbitration provision to require that both parties consent to arbitration. *See* App. 3059

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The Hoffmans are part of a class action brought against title insurers in New Jersey and Pennsylvania. We previously affirmed the District Court's order compelling arbitration as to the other class members. *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291 (3d Cir. 2016).

2

("You and the Company may *together* agree to arbitration . . . ") (emphasis added).  In contrast, the Loan Policy did not contain the Endorsement.

Following a partial grant of a motion to dismiss, the Hoffmans' one remaining claim was for breach of contract.  Lawyers Title then moved to compel arbitration.  The District Court denied this request because it concluded that the Arbitration Endorsement controlled, meaning both parties would have to consent to arbitrate, and it found that the Hoffmans did not agree to do so.

## II.  JURISDICTION AND STANDARDS OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1332(d)(2) and we have jurisdiction under 9 U.S.C. § 16(a)(1)(b).  We exercise plenary review over the District Court's legal conclusions and review its factual findings for clear error.  *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 53 (3d Cir. 2001).

## III.  ANALYSIS

Lawyers Title Insurance first asserts that the Arbitration Endorsement was sent in error, and thus, under a theory of mutual mistake, the policy agreement must be reformed to excise the Endorsement.  Mutual mistake requires clear and convincing evidence of a meeting of the minds.  Where there is a "general understanding" that lacks specific details that are later disputed, reformation under a mutual mistake theory is unavailable. *St. Pius X House of Retreats, Salvation Fathers v. Diocese of Camden*, 443 A.2d 1052, 1056-57 (N.J. 1982).  Here there was not even a "general understanding" regarding arbitration.  Indeed, the parties never discussed arbitration with one another let alone

3

reached any agreement contrary to the Endorsement.  Accordingly, mutual mistake does not apply.

Lawyers Title also argues that the Closing Service Letter, on which the Hoffmans' breach-of-contract claim is based, incorporates only the Loan Policy and not the Owner's Policy.  It further contends that the Arbitration Endorsement applies only to the Owner's Policy, not the Loan Policy.  Thus Lawyers Title reasons that the Endorsement (and its requirement that both parties must agree to arbitrate) does not apply to the Closing Letter.  This is a remarkable 180-degree turn from its position before the District Court, where Lawyers Title argued the opposite—that the Closing Letter incorporated both policies.

Waiver or estoppel arguments aside, Lawyers Title's newly forged interpretation of the Letter lacks merit.  The Closing Letter states that liability under it "is subject to all of the Conditions and Stipulations of the policy or *policies*" Lawyers Title issued in connection with the Hoffmans' purchase of their home.  App. 3723 (emphasis added).  These policies include both the Owner's and Loan Policies.  Hence the Letter incorporates the conditions of both, including the Arbitration Endorsement.  Accordingly, because the Endorsement applies and the Hoffmans did not agree to arbitrate, we affirm the District Court's denial of the motion to compel arbitration.